UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TESORO ZEPEDA DUARTE,<br><br>        Plaintiff,<br><br>v.<br><br>STATE OF WASHINGTON, et al.,<br><br>        Defendants. | NO. CV-09-0205-JLQ<br><br>**MEMORANDUM OPINION;<br>ORDER GRANTING SUMMARY<br>JUDGMENT;  DIRECTING<br>ENTRY OF JUDGMENT and<br>CLOSING OF FILE** |

**BEFORE THE COURT** is the Defendants' Motion for Summary Judgment (Ct. Rec. 23), to which the Plaintiff has responded in opposition (Ct. Rec. 36) and the Defendants have replied (Ct. Rec. 41).

Plaintiff is a state prisoner serving a sentence for murder and proceeding without counsel in an action brought under 42 U.S.C. § 1983. Plaintiff's Complaint alleges that Defendants violated his equal protection rights and were deliberately indifferent to his medical needs. For the reasons explained below, the court grants summary judgment in favor of Defendants.

**II. UNDISPUTED FACTS**

Plaintiff is a Washington state prisoner in the custody of the Department of Corrections (DOC).  Plaintiff was at all relevant times (August 5, 2005 through September 8, 2009), incarcerated at the Airway Heights Corrections Center (AHCC). Plaintiff's earliest release date is November 11, 2016.

Plaintiff's Complaint alleges that "[f]or over three years" he has been denied the ability to make international telephone calls.  Plaintiff claims he was "denied equal access to the telephone." Ct. Rec. 2 at 10. Prior to August 18, 2009, offenders could not make international phone calls because there was not a process in place for collecting the funds for placing such a call.   After August 18, 2009, the DOC implemented a program which enables an offenders' friends and family to place pre-paid funds on a phone account for the offender, so the offender can call any phone number, including international numbers.

Plaintiff's Complaint also alleges that 300 times he requested consideration for an international transfer, but Defendants refused to consider his request.  He alleges Defendants have a policy of refusing all international transfer requests to Mexico, and that this refusal violates an unspecified international treaty  and denies him equal protection under the law.

On December 12, 2003, Plaintiff and a Corrections Officer, Judy Wick, met with Israel Camposane and Roberta Caldera from the Mexican consulate to discuss Plaintiff's request for an international transfer.  Plaintiff was advised that an international transfer was a long process and would require many approvals before it could occur.  Gary Bohon was a Correctional Program Manager for the Classification Treatment Unit, and involved in considering Plaintiff's request.  It was his understanding from contacts with the United States Department of Justice that the Mexican government would not accept transfers of offenders with more than five years left to serve on his or her sentences.

On September 13, 2004, a DOC committee reviewed Plaintiff's request for transfer and decision was deferred so that Bohon could contact the prosecuting attorney for his/her opinion (which is required by DOC policy), contact the consulate for clarification, and investigate Duarte's security threat group information.  In March 2005, the King County prosecutor's office sent a letter indicating opposition to the requested transfer as the crime Plaintiff had committed was murder and it was uncomfortable with the "uncertain 'comparable sentence' in Mexico."  The DOC committee reviewed the case

again on July 22, 2009, and submitted a recommendation of denial to DOC Secretary Eldon Vail for final decision.  The form which indicates the decision states "2 victims. Murder 2nd. Prosecutor opposes.  Judge has no objection.  No assurance sentence would be carried out in receiving nation. Recommend denial...." Ct. Rec. 30 at 9.  Vail forwarded a letter summarizing the committee's recommendation for denial to Governor Christine Gregoire, who on August 31, 2009 denied Plaintiff's request for international transfer.  Ct. Rec. 30 at 15.

Plaintiff's Complaint alleges Plaintiff was denied the opportunity to enroll for education or apply for a job in the Optical Department because he had an Immigration and Customs Enforcement detainer.   The detainer also prevents him from participating in the Mutual Agreement Plan program, which is required for work release.  Plaintiff claims these policies denied him equal protection and discriminate against him on the basis of national origin.   The Optical Program at AHCC is a two-year training program for becoming a Lab Technician.  The goal is train offenders for a skill he or she will be able to use upon release.   Offenders with an ICE detainer are not allowed to enroll in the educational program, because the limited number of positions are reserved for offenders who will be released into the community, as opposed to deported.  Offenders with ICE detainers can be employed in the Optical Program as a Clerk.

Plaintiff's Complaint alleges he has extreme lower back medical problems and that he was informed by a prison medical provider that orthopedic shoes would help ease the pain.  On October 2, 2007, Plaintiff filed a grievance regarding his request for orthopedic shoes.  Plaintiff alleges Defendants were deliberately indifferent to his medical needs when his request for orthopedic shoes was denied because the health plan did not allow for them to be issued.    Two months later the DOC responded to the grievance. The December 17, 2007, response indicates "You were interviewed by Ray Bergroos, HCM II, on November 8, 2007.  Your medical record was subsequently reviewed and your provider was consulted.  According to your primary care provider, your medical condition does not meet the criteria for being issued medical shoes." Ct. Rec. 32 at 11.

Plaintiff's appeal was denied on January 18, 2008, after the DOC Medical Director reviewed the appeal (Ct. Rec. 32 at 15), and with the explanation that "[a]fter evaluating your medical condition, your doctors decided that medical footwear was not the answer. This [sic] did provide other treatment which seems to be working."   Ct. Rec. 32 at 14.

## III. LEGAL STANDARDS

### A. Summary Judgment

Summary judgment  is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c)(2). Summary judgment  avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986). At bottom, a summary judgment  motion asks "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-52.

Under summary judgment practice, the moving party

always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting the prior language of Rule 56(c), which was amended in 2007 to implement purely stylistic changes). If the moving party meets its initial responsibility, the opposing party must "set out specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e)(2); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must demonstrate-through evidence in the form of affidavits and/or admissible discovery material-a factual dispute that is both material (i.e. it affects the outcome of the claim under the governing law) and genuine (i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party).

Fed.R.Civ.P. 56(e)(2); *Anderson*, 477 U.S. at 248-50; *Matsushita*, 475 U.S. at 586 n. 11. Summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 322. Thus, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323.

In resolving a summary judgment motion, the court examines the pleadings, the discovery and disclosure materials on file, and any affidavits filed by the parties. Fed.R.Civ.P. 56(c)(2). The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in his or her favor. *Anderson*, 477 U.S. at 255; *Matsushita*, 475 U.S. at 587. Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " *Matsushita*, 475 U.S. at 587 (citation omitted).

On August 7, 2009, the court informed plaintiff of the requirements for opposing a summary judgment motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Rand v. Rowland*, 154 F.3d 952, 955-60 (9th Cir.1998) (en banc), cert. denied, 527 U.S. 1035 (1999); *Klingele v. Eikenberry*, 849 F.2d 409, 411-12 (9th Cir.1988).

**B. Section 1983**

Section 1983 imposes two essential proof requirements upon a claimant: (1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States. *See* 42 U.S.C. § 1983; *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), overruled on other grounds by *Daniels v. Williams*, 474 U.S. 327, 328, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir.1985) (en banc).

**IV. ANALYSIS**

**A. Equal Protection**

Plaintiff claims his equal protection rights were violated when he was not allowed to place international phone calls, when he was refused consideration for an international transfer, and being denied the ability to participate in the Optical Program because of his ICE detainer.

The Equal Protection Clause of the Fourteenth Amendment requires that persons who are similarly situated be treated alike. *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439, (1985). A plaintiff may establish an equal protection claim by showing that the plaintiff was intentionally discriminated against on the basis of the plaintiff's membership in a protected class. *See, e.g ., Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001). If the action in question does not involve a suspect classification, a plaintiff may establish an equal protection claim by showing that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *San Antonio School District v. Rodriguez*, 411 U.S. 1(1972). To state an equal protection claim under this theory, a plaintiff must allege that: (1) plaintiff is a member of an identifiable class; (2) plaintiff was intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment. *Village of Willowbrook*, 528 U.S. at 564.

**1. International Phone Calls**

The summary judgment record evidences that no offender in DOC custody was able to make international phone calls prior to August 18, 2009, when a new billing system was put in place.   Plaintiff's equal protection claim fails as a matter of law because Plaintiff is unable to show that he was treated differently from others or that the Defendants acted with intent to discriminate.

### 2. International Transfer

Plaintiff claims Defendants refused to consider him for international transfer.  The summary judgment record belies this contention.  The record evidences he was considered and denied transfer by DOC and the Governor.  Moreover, Plaintiff has failed to allege any facts which would establish an equal protection violation.  Finally, the court also notes there is no authority creating an individual right to a foreign national prisoner to be transferred to his home country.   Plaintiff has not and cannot demonstrate the violation of a treaty in the decision to deny his transfer.

### 3. Educational Programming and Work Release

Plaintiff alleges he was denied the opportunity to enroll or apply for a job at the prison Optical Department, or to apply for work release, because he had an ICE detainer.

It is well settled that there is no right to participate in rehabilitative programs or employment while incarcerated. *Moody v. Daggett*, 429 U.S. 78, 88, n. 9 (1976); *Baumann v. Arizona Dep't of Corrections*, 754 F.2d 841, 846 (9th Cir.1985) (no constitutional right to jobs and educational opportunities); *Rizzo v. Dawson*, 778 F.2d 527, 530 (9th Cir.1985) (no liberty or properly interest in vocational training); *Hoptowit v. Rhay*, 682 F.2d 1237, 1254-55 (9th Cir.1982) (no constitutional right to rehabilitation); *accord Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir.1987) (no constitutional right to prison job).

Plaintiff does not claim that he was treated any differently than any other offender with a detainer.   Because in-prison educational, vocational, rehabilitation, and other treatment programs are generally (1) overcrowded and (2) designed for inmates who will shortly be released to the public world, prisoners that may be released only to go to another prison, facing longer sentences, or with detainer holds are often held in stricter custody levels and denied various in-prison benefits.  An outstanding detainer creates an uncertainty that obstructs purpose of programs of prisoner education and rehabilitation.  Though most of the decisions are unpublished, other courts considering claims similar to Plaintiff's have found the policy does not violate equal protection.  The decisions of

these courts find there is a rationale basis for excluding those who will be sent out of the country after the term of their sentence from reformative programs. *See e.g.*, *U.S. v. Tamayo*, 162 Fed.Appx. 813, 816 (10th Cir. 2006)(unpublished)("[T]here is a rational basis to deem deportable aliens, who will be sent out of the country after the term of their sentence, ineligible for programs geared toward rehabilitating prisoners who will re-enter society after their release from confinement."); *Ruiz-Loera v. United States*, 2000 WL 33710839, at *2 (D. Utah June 23, 2000) (deterring further re-entry, avoiding risk of flight, and saving expenses are legitimate basis to treat deportable persons differently).\

Furthermore, Plaintiff's claim that he was denied opportunity to apply to work at the Optical Department is misleading because the DOC permits offenders with detainers to work there as clerks.

As for Plaintiff's ability to participate in work release, the Ninth Circuit has held that the practice of "excluding prisoners with detainers from participating in community-based treatment programs, and consequently from sentence reduction eligibility" does not violate equal protection because it is "rationally related to the BOP's legitimate interest in preventing prisoners from fleeing detainers while participating in community treatment programs." *McLean v. Crabtree*, 173 F.3d 1176, 1185-86 (9th Cir. 1999).

Accordingly, Plaintiff's claim based upon the detainer's effect on the conditions of his confinement, does not provide a basis for relief.

**B. Eighth Amendment Claim**

Prison officials violate the Eighth Amendment when they engage in "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A prison official is deliberately indifferent when he knows of and disregards a risk of injury or harm that "is not one that today's society chooses to tolerate." *Helling v. McKinney*, 509 U.S. 25, 35 (1993); *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The official must "be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,

and he must also draw the inference." *Farmer*, 511 U.S. at 837. Deliberate indifference "may be manifested in two ways. It may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir.1988).

There is no evidence in the record that a medical provider recommended or ordered orthopedic shoes. Plaintiff's grievance concerning the shoes was addressed and reviewed by medical staff. The grievance was denied as it was not medically required. Plaintiff fails to show that Defendants acted with deliberate indifference to a serious medical need and accordingly, the court will grant summary judgment to Defendants. *Wilson v. Seiter*, 501 U.S. 294, 302 (1991).

## IV. CONCLUSION

**IT IS HEREBY ORDERED:**

Defendants' Motion for Summary Judgment (**Ct. Rec. 23**) is **GRANTED**. The Clerk of the Court is directed to enter this order, enter judgment dismissing the Plaintiff's Complaint (Ct. Rec. 2) and the claims therein with prejudice, provide copies to Plaintiff and counsel, and close the file.

DATED this 6th day of September, 2010.

s/ Justin L. Quackenbush
JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE